**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2564
_____

DERRICK BULLARD,
                                        Appellant

v.

WARDEN WILLIAM SCISM
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 10-cv-02528)
District Judge:  Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2011

Before:  SLOVITER, SMITH and GREENBERG, Circuit Judges

(Opinion filed:  November 4, 2011)

_____

OPINION
_____

PER CURIAM

        Derrick Bullard, a prisoner proceeding pro se, appeals from the District Court's

order denying his petition for writ of habeas corpus under 28 U.S.C. § 2241.  For the

reasons that follow, we will affirm.

I

During part of 2010, Bullard was confined at the Metropolitan Detention Center in Brooklyn, New York, where he was serving out part of his 240-month sentence for conspiracy to distribute cocaine base. On July 27, 2010, he was videotaped placing a letter under the door to the officers' station in his unit. The letter, which was directed to a female officer, contained romantic sentiments. Later that day, Bullard was issued an incident report charging him with making sexual proposals or threats to another in violation of Code 206.

On the following day, the Unit Disciplinary Committee ("UDC") held a hearing and determined that referral of the matter to a Disciplinary Hearing Officer ("DHO") was appropriate. The DHO returned the incident report to be rewritten and reinvestigated to properly notify Bullard of the charges. The revised incident report, which was prepared and given to Bullard on August 17, 2010, differed from the original only in that the revised version included the text of Bullard's letter to the officer. On August 26, 2010, the UDC held a second hearing and referred the incident report to the DHO. On the same day, Bullard was notified of the UDC's action and was advised of his rights before the DHO.

On August 31, 2010, the DHO conducted a hearing on the charges against Bullard. At the hearing, the DHO reviewed Bullard's due process rights with him, and Bullard indicated that he understood his rights, had no evidence to present, and requested no

2

witnesses. He did, however, request a staff representative, and Lieutenant Gonzalez appeared on his behalf. The DHO found that Bullard committed a violation of Code 299, conduct which disrupts the orderly running of the institution, and that his conduct most resembled a violation of Code 206, making sexual proposals or threats to another. The DHO explained that the decision was based on the reporting officer's statements, the video surveillance footage, Bullard's letter to the officer, and Bullard's admission that he wrote and delivered the letter. The DHO sanctioned Bullard with 15 days' disciplinary segregation, 175 days' loss of commissary and TRU LINKS privileges, and the loss of 27 days of good conduct time. On September 8, 2010, Bullard received a copy of the DHO report, which summarized the evidence relied upon by the DHO and the reasons for the sanction, and advised Bullard of his appeal rights.

Twice thereafter, Bullard attempted to challenge the DHO's decision through the administrative remedy procedure. However, his appeals were rejected because they were not timely filed and, despite being afforded the opportunity to do so, Bullard failed to provide staff verification that the untimely filing was not his fault. After his appeals were rejected, Bullard attempted to appeal the rejections to the Bureau of Prisons' Central Office. While the appeal to the Central Office was pending, Bullard filed the instant § 2241 petition in the District Court.

In the § 2241 petition, Bullard contended that the regulations governing discipline and administrative remedies were invalid, and that prison officials denied his right to due process in applying those regulations. The District Court denied the petition, reasoning

3

that Bullard had failed to exhaust available administrative remedies and, in the alternative, that the petition lacked merit. Bullard now appeals that decision.

II

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its factual findings. Cradle v. United States ex rel. Miner, 290 F.3d 536, 538 (3d Cir. 2002). We may affirm on any grounds supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

We need not reach the exhaustion issue because we agree with the District Court that, regardless of whether Bullard fully exhausted his administrative remedies, his petition lacked merit. At the outset, we note our agreement with the District Court that, although Bullard repeatedly claimed that his petition was an attack on the validity of the prison regulations, the thrust of his petition was actually a challenge, on due process grounds, to the prison officials' implementation of those regulations.[1]

"[A] prisoner has a constitutionally protected liberty interest in good time credit." Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Thus, a prisoner facing the loss of good-conduct time as a result of an infraction is entitled to certain procedural protections in the disciplinary proceedings. See Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974).

---

[1] To the extent, however, that Bullard insists that his petition raised a challenge to the validity of the applicable regulations, he has not identified any authority supporting his proposition.

4

The minimum required protections are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [the inmate's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67).

The record reflects that prison officials comported with these requirements at all stages in Bullard's disciplinary proceedings. Bullard's complaint is somewhat confusing, though his filings seem to raise two issues warranting discussion. First, Bullard appears to have alleged that because the DHO directed that his first incident report be rewritten, the first incident report was invalid, and all disciplinary proceedings occurring before he received the rewritten incident report were invalid. His argument lacks merit. Although the record does not reflect the specific reason that the DHO instructed that the incident report be rewritten, the original report differs from the rewritten report only in that the latter includes the text of Bullard's letter to the officer. The original report, which he received in advance of the first UDC hearing, otherwise adequately apprised Bullard of the charge against him, i.e., violating Code 206, and the basis for the allegation. See D. Ct. Doc. No. 6, 9. The report therefore satisfied the requirements of Wolff.

Bullard also took issue with the fact that his second UDC hearing did not occur within three days of the incident report being rewritten. Under the then-applicable regulations, an inmate charged with misconduct "is entitled to an initial hearing before

5

the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(b) (2010). "This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays." Id. Further, "[t]he UDC may extend [the three-day time limit] for a good cause shown by the inmate or staff and documented in the record of the hearing." § 541.15(k) (2010). Although Bullard's second incident report was written on August 17, 2010, his subsequent UDC hearing was not held until August 26 -- seven work days later. The District Court reasoned that prison officials did not violate § 541.15 because subsection (b) does not *require* that a hearing be held within three days, but instead provides only that the UDC hearing *ordinarily* will take place in that time, and that the re-investigation that occurred after the incident report was rewritten likely accounted for the delay in holding the UDC hearing.

In this case, even if the regulation were violated, its violation is not actionable. Bullard cannot show that his right to due process was violated by a possible technical non-compliance with the regulation, given that Wolff does not require that a UDC hearing take place within three days of an incident (or the re-issuance of an incident report), and where any delay did not prejudice him. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (explaining that "at least in situations where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated"); cf. Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003) (holding, in the immigration context, that

6

"there would be no due process violation in the absence of prejudice"). Moreover, Bullard has not shown that § 541.15(b) itself created a liberty or property interest such that its alleged violation abridged his due process rights. See <u>Sandin v. Conner</u>, 515 U.S. 472, 487 (1995).

 Accordingly, we will affirm.