**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term 2019

(Submitted: November 27, 2019　　　　　Decided: June 8, 2020)

Docket No. 18-3377

———————————

DWAYNE BACON,

*Plaintiff-Appellant*,

*v.*

PHELPS, FKA PHILLIPS,

*Defendant-Appellee*,

MR. LANGFORD, WARDEN, FCI RAY BROOK, MR. P. SHIPMAN, S. I. S. LIEUTENANT, FCI RAY BROOK,

*Defendants*.

Before: KATZMANN, *Chief Judge*, CALABRESI, AND LOHIER, *Circuit Judges*.

———————————

Appeal from orders and a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*) granting motions to dismiss filed by Defendant Shipman and Defendant Phelps. Appellant was a prisoner at Federal Correctional Institution in Ray Brook, New York. He contends that after he wrote a letter to his sister stating that he "wanted" a woman—whom officials understood

to refer to a particular correctional officer—Defendants disciplined him by placing him in the prison's Special Housing Unit and transferring him to a different facility. He argues that he was retaliated against for exercising his First Amendment right to free speech.

We hold that Defendants violated Bacon's constitutional rights by disciplining him for speech that, in the medium used (correspondence to a third party outside the prison) was not threatening and did not implicate security concerns. We further conclude that Defendants were entitled to qualified immunity. We therefore affirm the judgment of the district court.

——————————————

Dwayne Bacon, *pro se*, Welch, WV.

Karen Folster Lesperance, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Albany, NY, *in support of Phelps, FKA Phillips*.

——————————————

GUIDO CALABRESI, *Circuit Judge*:

Dwayne Bacon is a prisoner at Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"). He alleges that after he wrote a letter to his sister from prison stating that he "wanted" a woman—whom officials understood to refer to a particular correctional officer—he was retaliated against by being placed in the prison's Special Housing Unit ("SHU"), and ultimately spent 89 days in isolated confinement for an "improper purpose." App'x 59. Bacon brought this

suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), asserting First Amendment retaliation and procedural due process claims against two correctional officers: Captain Phelps and S. I. S. Lieutenant P. Shipman. The district court dismissed Bacon's First Amendment claim because the court construed his speech to be a sexual threat, and therefore not protected. The court concluded that Bacon was disciplined for making such a threat rather than for writing his letter. It also ruled that the defendants were entitled to qualified immunity because they had not violated Bacon's constitutional rights.

We hold that officers violated Bacon's constitutional rights by disciplining him for speech that, in the medium used (correspondence to a third party outside the prison), was not threatening and did not implicate security concerns. But because we also conclude the defendants were entitled to qualified immunity, we affirm the judgment of the district court.

## BACKGROUND

### A. Factual History

Bacon alleges that on March 6, 2015, he was summoned from his cell to the office of S. I. S. Lieutenant P. Shipman as part of an investigation into a letter Bacon wrote to his sister. The letter stated, "there is only one Black Woman here. I

believe she is an Indian.  She is very beautiful and healthy.  I do want her but I want a few other Women as well."  In his interview with Shipman, Bacon admitted that he was referring to a correctional officer named Officer Ferland.  The same day, Shipman placed Bacon in disciplinary segregation in the Special Housing Unit ("SHU").

On March 19, 2015, Bacon received an incident report issued by Shipman that charged him with violating Prohibited Act Code 206, "making sexual proposals or threats to another."  App'x 18.  The report acknowledged that Bacon "did not directly" make any sexual statements to Officer Ferland, but concluded that he "still made an indirect sexual threat toward the safety of Officer Ferland."

At a disciplinary hearing on March 23, 2015, Bacon admitted to writing the letter but maintained that it was not a sexual proposal or threat toward the officer. He explained that it was merely "how he and his sister speak to each other to make them laugh."  The hearing officer decided that Bacon was guilty of the act as charged in the incident report.  Specifically, the hearing officer indicated that he considered Bacon's contention that he and his sister would use "sexual overtone[s] to make a point or communicate," but concluded that "your statement to your sister can be perceived as a threat toward another person, in this case a female staff

4

member."  The hearing officer's report then stated that "[s]exual statements or communicating a sexual desire about [a] staff member is inappropriate language that can be considered a threat."  Bacon was sentenced to thirty days in the SHU, 90 days' loss of phone and commissary privileges, and 27 days' loss of good time.[1]

Bacon appealed the hearing officer's decision, arguing that the statement in the letter to his sister was not a sexual proposal nor was it "directly or indirectly" a threat.  The regional director issued a response on May 5, 2015, noting that "[a] review of [Bacon's] appeal revealed questions concerning the disciplinary process" and remanding the case for further review.  On May 14, 2015, while awaiting information from the prison's review, Bacon was transferred to United States Penitentiary Canaan, where he remained for 20 days before being transferred to FCI McKean.

On July 22, 2015, the regional director reversed the disciplinary sanctions against Bacon and expunged them from his record after determining that "[a]

---

[1] Although Bacon was sentenced to 30 days in the SHU, his Second Amended Complaint alleges that he spent a total of 89 days in isolated confinement.  The record does not explain the difference.

5

thorough review of the record revealed questions concerning the evidence relied upon."

**B.** **Procedural History**

Bacon filed a *pro se* Second Amended Complaint alleging, among other things, that in retaliation for writing a letter and in violation of his First Amendment right to free speech, he was placed in isolated confinement for a total of 89 days. Specifically, he argued that Shipman issued a "false misbehavior report" and placed him in the SHU in retaliation for the letter Bacon wrote to his sister. App'x 57. He added that Phelps threatened him by telling him he would receive a "shot" (an incident report) and a disciplinary transfer as a result of writing the letter. App'x 56. Bacon contended that Phelps ignored the orders of the regional director and proceeded to have Bacon transferred to a different facility, again in retaliation for exercising his rights under the First Amendment.

Defendant Shipman filed a motion to dismiss the Second Amended Complaint for failure to state a claim.[2] He argued, among other things, that "an

---

[2] Initially, Shipman alone moved to dismiss the Second Amended Complaint because at that time he was the only defendant who had been served. Shipman's motion contained a footnote

inmate in a federal prison does not have a First Amendment right to state his sexual desire for a female officer charged with maintaining security," and that, in any event, he (Shipman) was entitled to qualified immunity.[3] App'x 66.

Magistrate Judge Hummel recommended that Shipman's dismissal motion be granted. The magistrate judge observed that the conduct for which Bacon was disciplined "was not the fact that he wrote a letter, but that the letter contained what was perceived as a sexual threat against a prison employee," and that such threats do not constitute protected speech under the First Amendment. App'x 87. The magistrate judge further reasoned that even if the letter contained speech protected by the First Amendment, the prison had a "legitimate penological interest in prohibiting such conduct, as permitting the use of sexual language or discussion of sexual desires relating to a prison employee could pose a risk to that employee or others." App'x 88. The magistrate judge concluded that Bacon's

---

indicating that Phelps had not been served with any pleading, but that, once served, Phelps intended to file a motion to dismiss that was "largely identical to the one at bar." Phelps consented to a waiver of service on July 17, 2017 and, as described *infra*, Phelps filed his own motion to dismiss the case on September 22, 2017. Bacon now appeals the district court's orders as to both dismissal motions.

[3] In his own motion to dismiss, which is discussed in more detail *infra*, Phelps also argued that he was entitled to qualified immunity.

speech was not protected under the First Amendment, and as a result, his constitutional claim for retaliation failed. The magistrate judge also held that Shipman was entitled to qualified immunity because Bacon failed to show that Shipman violated a constitutional right.[4]

The district court adopted the magistrate judge's Report and Recommendation in full and granted Shipman's motion to dismiss on September 21, 2017.[5] The court directed Phelps to contact the court to set a briefing schedule for the filing of dispositive motions on his own behalf.

Phelps filed a motion to dismiss on September 22, 2017, arguing that Bacon's Second Amended Complaint failed to state a claim for a violation of his First and Fourteenth Amendment rights, and also failed to allege that Phelps was personally involved in any constitutional violation. Phelps further asserted that he was entitled to qualified immunity.

---

[4] Bacon filed an objection to the magistrate judge's Report and Recommendation, asserting, among other things, that he never admitted to Shipman that Officer Ferland was the woman he referred to in his letter, and that the defendants effectuated a disciplinary transfer despite orders directing otherwise.

[5] Bacon filed an interlocutory appeal of the district court's order granting Shipman's motion to dismiss. This court issued an order denying Bacon's appeal and explaining that this court lacked jurisdiction to hear the appeal because the order was not final since litigation was ongoing against Phelps.

8

Bacon opposed the motion by repeating his First Amendment claim and asserting that the defendants disciplined him by harassing him and placing him in isolated confinement in contravention of direct orders. Bacon also argued that the comments in his letter referred not to Officer Ferland but instead to women he met on the "PrisonPenPals.com" internet site.

Magistrate Judge Hummel issued a second Report and Recommendation recommending that Phelps's motion to dismiss be granted. The magistrate judge again observed that "plaintiff was not disciplined for writing a letter; instead, he was disciplined because the letter contained language perceived as a sexual threat against a prison employee." App'x 137 (internal quotation marks omitted). The magistrate judge therefore concluded that "the facts set forth in plaintiff's second amended complaint do not plausibly suggest that plaintiff's sexual comments regarding a female prison guard constitute protected speech under the First Amendment." App'x 138.

In response to Bacon's argument that the letter referred to women he met on PrisonPenPals.com, Magistrate Judge Hummel noted that Bacon "does not have a constitutionally protected right to use inappropriate, disrespectful, and derogatory language." App'x 139 (internal quotations and alteration omitted).

The magistrate judge observed that "[i]nsofar as plaintiff suggests that Capt. Phelps threatened that plaintiff would receive an incident report and would be subject to a disciplinary transfer because of the letter, verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim." App'x 140. Finally, because Bacon could not "establish[] a constitutional violation to satisfy the first prong of the qualified immunity test," the magistrate judge concluded that Phelps was entitled to qualified immunity.[6] The district court adopted the second Report and Recommendation and granted Phelps's motion to dismiss on August 30, 2018.

In a letter docketed on October 12, 2018, Bacon informed the district court that he had been transferred to another correctional institution and that he had sent a notice of appeal on September 19, 2018. On October 19, 2018, the court received another letter from Bacon stating that the notice of appeal that he filed on September 19, 2018 did not appear on the docket, and inquiring whether the notice

---

[6] Bacon filed an objection to the magistrate judge's second Report and Recommendation, arguing, among other things, that he was not found guilty of Prohibited Act Code 206 because the disciplinary sanctions were ultimately reversed and expunged from his record; that the letter containing the alleged threat was not retained as evidence; that Shipman sent him to the SHU without informing him of the charges against him; and that Phelps promised Bacon he would receive a "shot" and would be found guilty.

of appeal "went through or not[.]" App'x 157. On October 31, 2018, the court received a third letter in which Bacon again explained that his case was dismissed on August 30, 2018, that he had filed a notice of appeal on September 19, 2018, but that he did not know if that notice was "acknowledged" or if the notice of appeal "went through." App'x 158. Bacon asked the court to "provide [him] with the proper information and material" to file an appeal. App'x 158. This last letter was denoted a "Notice of Appeal" with respect to the district court's August 30, 2018 judgment and order granting Phelps's motion to dismiss. *See* Dkt. 49.

## DISCUSSION

### A. Standards of Review

We "review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The complaint, however, must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

We review a district court's decision with respect to qualified immunity on a motion to dismiss *de novo*. *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015).

**B. Appellate Jurisdiction**

We must first assure ourselves that we have jurisdiction to review Bacon's arguments on appeal. The district court entered judgment dismissing Bacon's case on August 30, 2018. But Bacon did not file a formal notice of appeal in the district court. Instead, Bacon's three letters, which the district court docketed on October 12, 19, and 31, 2018, indicated that he had sent a notice of appeal on September 19, 2018. The district court deemed his final letter a "Notice of Appeal" on its docket. We must decide whether this letter sufficiently evinced Bacon's intent to appeal a decision of the district court to permit us to review his claims.

A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The requirement is jurisdictional, but "it is well settled that courts should apply a liberal interpretation to that requirement." *Conway v. Village of Mount Kisco*, 750 F.2d 205, 211 (2d Cir. 1984). Furthermore, "a notice of appeal filed by a *pro se* litigant must be viewed liberally, and not every technical defect in a notice of appeal constitutes a jurisdictional defect." *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016) (quoting *Grune v. Coughlin*, 913 F.2d 41, 43 (2d Cir. 1990)). "'Our task,' therefore, 'is to interpret the notice of appeal so as to remain faithful to the intent of the appellant, fair to the

appellee, and consistent with the jurisdictional authority of this court.'" *Id.* (quoting *Conway*, 750 F.2d at 211). Accordingly, "[a]s long as the *pro se* party's notice of appeal evinces an intent to appeal an order or judgment of the district court and appellee has not been prejudiced or misled by the notice, the notice's technical deficiencies will not bar appellate jurisdiction." *Grune*, 913 F.2d at 43; *see also id.* at 42–43 (concluding that a *pro se* appellant's letter to the district court requesting assistance "obtaining appellate review of [his] bail denial" constituted adequate notice of appeal under Fed. R. App. P. 3(c) because it "sufficiently indicated his intent to appeal the district court's bail order").

Viewing Bacon's October 31, 2018 letter with the appropriate amount of liberality due *pro se* litigants, we conclude that it sufficiently evinces Bacon's intent to appeal an order of the district court. Bacon's letter noted that he previously filed a notice of appeal but did not see it on the docket, and it asked the district court for guidance. *See Grune*, 913 F.2d at 43. The appellees do not assert that Bacon failed to notify them of his intent to appeal. *See id.* (noting that the district court and the appellee were adequately apprised of the appellant's intent to appeal

a bail order).  We conclude that Bacon's October 31, 2018 letter properly may be deemed a notice of appeal.[7]

We must also consider which district court order or orders Bacon intended to appeal.  Bacon's October 31, 2018 letter clearly indicated that he wished to appeal the judgment entered on August 30, 2018 in which the district court granted Phelps's motion to dismiss and dismissed with prejudice the Second Amended Complaint.  Bacon earlier evinced an intent to appeal the district court's September 21, 2017 order granting Shipman's motion to dismiss when Bacon filed an interlocutory appeal, which this court dismissed as premature.  Because "in the absence of prejudice to an appellee, we read a pro se appellant's appeal from an order closing the case as constituting an appeal from all prior orders," *Elliot*, 823 F.3d at 173, we construe Bacon's appeal as challenging the orders dismissing the

---

[7] We also note that Bacon's notice of appeal was timely.  Federal Rule of Appellate Procedure 4(a)(1)(B) provides that where, as here, one of the parties is a federal officer or employee, any party has sixty days to file a notice of appeal.  Sixty-two days passed between the district court's August 30, 2018 judgment and the October 31, 2018 docketing of Bacon's "Notice of Appeal."  But because Bacon was incarcerated at the time, Federal Rule of Appellate Procedure 4(c)(1) applies, and a notice of appeal "is timely if it is deposited in the institution's internal mail system on or before the last day for filing" and is accompanied by "evidence (such as a postmark or date stamp) showing that the notice was so deposited."  The date on Bacon's handwritten letter is October 25, 2018, and the envelope was postmarked on October 26, 2018, both within the required sixty days.  Bacon's notice of appeal was therefore timely.

case against both Shipman and Phelps. Because the district court dismissed Bacon's claims against both defendants on similar grounds, and because defendants' brief in this appeal addresses the dismissal of Bacon's claims against both of them, the defendants will suffer no prejudice as a result. Indeed, defendants' brief expressly "assume[s] . . . that the Court may accept Bacon's October 25, 201[8] letter [which the district court docketed on October 31, 2018] as a timely-filed notice of appeal as to both the Shipman Order and the Phelps Order." Appellees' Br. 9 n.6.

**C. Qualified Immunity**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). There are therefore two steps to the qualified immunity analysis: first, whether the plaintiff established that his constitutional rights were violated, and second, whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The defendants bear

the burden of showing that they are entitled to qualified immunity. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

The Supreme Court has recognized that courts should exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis [to] address[] first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Our court has taken the position that "there remains a role for courts to rule on constitutional questions even in cases where qualified immunity ultimately determines the result." *Francis v. Fiacco*, 942 F.3d 126, 140 (2d Cir. 2019). There is value in making constitutional determinations, which "have a significant future effect on the conduct of public officials . . . and the policies of the government units to which they belong," because such rulings "establish[] controlling law and prevent[] invocations of immunity in later cases." *Camreta v. Greene*, 563 U.S. 692, 704–05 (2011); *see also Francis*, 942 F.3d at 142 (holding the defendants violated the plaintiff's constitutional rights before concluding the defendants were entitled to qualified immunity, and doing so in part to clarify "what exactly the Due Process Clause required" under the circumstances of the case).

Accordingly, and noting that the district court did the same, we elect to begin by considering whether prison officials violated Bacon's constitutional rights.

### i. Violation of a Constitutional Right

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). We "must approach prisoner claims of retaliation with skepticism and particular care" because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

Incarcerated persons do not enjoy the full panoply of constitutional rights that non-incarcerated individuals do. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[L]awful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights, a retraction justified by the considerations underlying our penal system." (internal quotation marks omitted)). A prisoner retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," such as the goal of maintaining institutional safety and security. *Id.*

Although "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment," *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003), a letter containing a threat is not protected by the First Amendment. *See Lane v. Salazar*, 911 F.3d 942, 949 (9th Cir. 2018). "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974) (noting the "Herculean obstacles" facing prison officials that courts are "ill equipped to deal with"), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). District courts in this circuit have therefore concluded that profane or disrespectful speech directed at a corrections official is unprotected by the First Amendment. *See Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 215 (N.D.N.Y.

2008). A prisoner's use of abusive or threatening language is also unprotected. *See*

*Jermosen v. Coughlin*, 878 F. Supp. 444, 450–51 (N.D.N.Y. 1995).

Despite the deference we give prison officials to determine what constitutes punishable conduct within a prison's four walls, "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims . . . . When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Martinez*, 416 U.S. at 405–06. This is such a case.

Bacon argues that the letter he sent to his sister was an exercise of his right to speech under the First Amendment for which he suffered retaliation by being sent to the SHU. His letter to his sister professed that he "want[ed]" a woman he described as a "beautiful and healthy" "Black Woman," and we assume that Bacon at one point acknowledged that he was referring to a correctional officer at FCI Ray Brook. This statement, in the medium used (correspondence to a third party outside the prison), was not profane, abusive, nor threatening. It contained a mere expression of attraction communicated by a person confined in an institutionalized setting. Furthermore, we underscore that Bacon did not declare his desire to the correctional officer herself or to anyone in the prison facility—he

expressed it only privately in a letter to his sister. Even using considerable imagination and affording substantial deference to the professional judgment of prison officials, *see Overton*, 539 U.S. at 132, we cannot say that, in the medium used (correspondence to a third party outside the prison), there was anything remotely threatening about the letter, nor that the prison had a legitimate penological interest in prohibiting the language Bacon used. Indeed, by reversing and expunging the sanctions imposed from Bacon's disciplinary record, the regional director of the Bureau of Prisons ultimately seems to have reached the same conclusion.

We therefore hold that the district court erred by deeming Bacon's statement in his letter to be the sort of "threatening or otherwise inappropriate language" that "does not constitute protected . . . speech." App'x 138. Our holding does not undermine prison authorities' ability to discipline prisoners pursuant to prison regulations that are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Where a prisoner makes a sexual proposal or threat in a letter in violation of Prohibited Act Code 206 or a similar regulation, he may properly be disciplined. *See, e.g.*, *Slaton v. Miller*, 77 F.3d 484, *1, n.1 (7th Cir. 1996) (unpublished) (prisoner disciplined for making sexual proposals or

threats when he left on the desk of a female officer an anonymous greeting card addressed "[t]o someone very nice," and from "a fan of yours," containing a romantic comic strip); *Bullard v. Scism*, 449 F. App'x 232 (3d Cir. 2011) (prisoner disciplined for violating Code 206 after slipping a letter directed to a female officer under the door to the officers' station in his unit)[8]; *Moore v. Schuetzle*, 486 F. Supp. 2d 969, 977 (D. N.D. 2007), *aff'd as modified by* 289 F. App'x 962 (8th Cir. 2008) (prisoner disciplined for writing a letter to corrections officer requesting that they meet privately, and explaining that he wanted "to hug you, to put my arms around you hold you closely a mature sophisticated full grown woman. I think that you can handle this gentle affectionate embrace and ripe expressing of a strong desire for something"). But the mild language at issue here, coupled especially with the fact that it was made in a letter to a member of Bacon's family, rather than to a correctional official or another prisoner, simply does not meet this standard. Significantly, defendants concede that the cases they cite in support of their

---

[8] The letter stated, among other things, "I never met a woman as sweet as you Your walk, the way you talk, damn near everything you do, I never met a women [sic] as sweet as you. Your sincere eyes, those pretty lips, your smile, those sexy hips, and your body fragrance smells oh so sweet, can you hear that? My Heart Skipped a Beat!" *Bullard v. Scism et al.*, No. 1.10-cv-02528-JEJ-SF, Dkt. 6, at 11.

argument that Bacon's statement constituted unprotected speech all involve speech that was communicated directly to the person the comments were about, and not to a third party outside the prison. *See* Appellees' Br. 35.

We do not doubt that some communications to third parties may contain sexual language that prison officials could reasonably perceive as a threat to prison discipline. *See, e.g.*, *Borker v. Baltazar*, 2014 WL 5020602 (M.D. Pa. Oct. 8, 2014) (prison employee monitoring inmates' emails saw email from prisoner with the subject line, "A guard likes me," in which he stated, "I am going to take a shower, then I am going to get dress up a little, do my hair with gel, and get back on the computer and pass by her office to ask her some questions. If it gets personal I am going to come down in the middle of the night, and try to fuck her."). We simply cannot say that under the facts and circumstances of this case, Bacon's language rises to the level of such a threat. Because Bacon sufficiently alleged that he was placed in the SHU and was given a disciplinary transfer as a result of his protected speech, we conclude that he has stated a valid retaliation claim under the First Amendment. *See Gill*, 389 F.3d at 384.

**ii. Whether the Right Was "Clearly Established"**

Although Bacon adequately alleged that prison officials violated his First Amendment rights, the officials nevertheless are entitled to qualified immunity if the rights were not "clearly established" at the time. *Gonzalez*, 728 F.3d at 154. To determine whether a right was clearly established, "we generally look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation." *Garcia*, 779 F.3d at 92 (internal quotation marks omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (alterations and internal quotation marks omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017). The Supreme Court repeatedly has instructed that courts must not define clearly established law at "a high level of generality." *al-Kidd*, 563 U.S. at 742; *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

In this case, the right at issue is not the general proposition that a prisoner has a First Amendment right to send mail and cannot be punished for its contents.

23

*See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Pell*, 417 U.S. at 822–24. Instead, the issue is whether, at the time Bacon sent a letter to a third party expressing his desire for a woman later identified as a female correctional officer, precedent from the Supreme Court or this court put prison officials on notice that they could not punish him for his statements in that correspondence. It did not. The right therefore was not "clearly established" and the defendants hence are entitled to qualified immunity. *See Burns v. Martuscello*, 890 F.3d 77, 94–95 (2d Cir. 2018) (concluding that the First Amendment protected a prisoner's right not to serve as an informant and the right to refuse to provide false information to prison officials, but also deciding that "due to the novel nature of the legal questions before us," the defendants were entitled to qualified immunity).

## CONCLUSION

We hold that the First Amendment protects a prisoner's right to express non-threatening sexual desire in communications with a third party outside the prison. Nonetheless, we conclude that the defendants are entitled to qualified immunity. Accordingly, we **AFFIRM** the district court's dismissal of the case against Defendants Shipman and Phelps.