*Sutton v. Stony Brook University*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of September, two thousand twenty-two.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> BARRINGTON D. PARKER,
> EUNICE C. LEE,
> *Circuit Judges.*

---

DANIELLE SUTTON,

> *Plaintiff-Appellant,*

v.                                                            21-2055

STONY BROOK UNIVERSITY, NICOLE GALANTE, in her Individual and Official Capacities, CHARLES TABER, in his Individual and Official Capacities, SAMUEL STANLEY, in his Individual and Official Capacities,

> *Defendants-Appellees.*

---

For Plaintiff-Appellant:          STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, New Paltz, NY.

For Defendants-Appellees:         MARK S. GRUBE, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, *on the brief*), *for* Letitia

1

James, Attorney General, State of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Danielle Sutton ("Sutton") appeals from an August 18, 2021, memorandum and order of the district court dismissing in its entirety Sutton's Third Amended Complaint ("TAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Sutton v. Stony Brook Univ.*, No. 18-CV-7434, 2021 WL 3667013 (E.D.N.Y. Aug. 18, 2021). Sutton alleges she was a victim of gender-based discrimination, harassment, and retaliation culminating in her removal from the graduate teaching program at Stony Brook University ("SBU"). She claims, as against SBU, violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and, as against the individual defendants, violations of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 ("Section 1983").[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We review *de novo* a district court order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020). The standard for surviving a motion to dismiss is well-established. "[A] complaint must contain sufficient

---

[1] Sutton's TAC makes allegations under Section 1983 against defendants Nicole Galante, Charles Taber, and Samuel L. Stanley, Jr. in their individual capacities, as well as Maurie McInnis and Eric Wertheimer in their official capacities. J.A. 15, 52. The district court correctly dismissed the Section 1983 claims against the individual defendants in their official capacities.

2

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). We have further held that "we 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (citing *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021)). The inquiry is thus whether a permissible inference may be drawn from "all of the facts alleged, taken collectively," and not whether there is a permissible inference from "any individual allegation, scrutinized in isolation." *Kaplan*, 999 F.3d at 854 (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)). Because Sutton's complaint was filed *pro se*, we consider it with "special solicitude," interpreting it "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir. 2006)).

## I.  Title IX Claims

We have held that "the burden-shifting framework established by the *McDonell Douglas* line of cases for claims of discrimination on account of race, religion, or national origin under Title VII, and the associated pleading burden that we articulated in *Littlejohn*, apply also to Title IX claims alleging discrimination on account of sex in education programs." *Doe v. Columbia University*, 831 F.3d 46, 55 (2d Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)). To survive a motion to

dismiss, a plaintiff alleging "gender discrimination by a university must do more than recite conclusory assertions." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). A Title IX plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent." *Id.*

Title IX does not "authoriz[e] suit[s] against school officials, teachers, and other individuals," *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). In order for an institution to be liable, a plaintiff must demonstrate that an official with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination and did not adequately respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The response of a school is inadequate if the school does not respond or responds in a manner that "amount[s] to deliberate indifference to discrimination." *Id.* Put another way, the response of the school must be "clearly unreasonable" in light of the circumstances known to officials. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999).

### A. Sexual Harassment Claim

A *quid pro quo* sexual harassment claim requires that the plaintiff prove three elements: (1) the rejection of sexual advances; (2) a tangible school-related consequence; and (3) a causal connection between the consequence and the rejected advances. *See Kariban v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994). Sutton argues that she has alleged sufficient facts to make out a *prima facie* case for *quid pro quo* sexual harassment under Title IX. We conclude that Sutton has not plausibly alleged that she rejected "sexual advances."

We agree with Defendants-Appellees that Sutton has not plausibly alleged that her SBU supervisor, Thomas Mangano, made sexual advances because (1) Mangano's communications

4

with Sutton were overwhelmingly group communications related to planning for the upcoming semester; (2) Mangano's requests to meet with Sutton were appropriately related to his role as her supervisor; and (3) Sutton's allegations related to Mangano's alleged sexual advances were only conclusory allegations of implied sexual advances. *Shalom v. Hunter Coll. of the City Univ. of N.Y.*, 645 F. App'x. 60, 62 (2d Cir. 2016) (summary order). Indeed, most of the allegations on which Sutton relies – for instance, that Mangano invited Sutton and a group of other students to a series of "working" breakfast meetings, J.A. 18-20, 143 – cannot give rise even to the "sheer possibility" of a plausible inference of sexual behavior. *Vengalattore*, 36 F.4th at 102 (noting that plausibility standard "asks for more than sheer possibility that a defendant has acted unlawfully" (quoting *Twombly*, 550 U.S. at 570)).

Even those that might, moreover – such as that Mangano "smiled at" Sutton and "[sat] at a desk uncomfortably close to [her]," J.A. 17 – may not be "scrutinized in isolation." *Kaplan*, 999 F.3d at 854. And here, Sutton's forty-seven-page TAC repeatedly makes extended references to other documents attached to it, as well as records that were later attached to Defendants-Appellees' motion to dismiss. Substantially for the reasons noted by the district court, *see* S.P.A. 12 (citing *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011)), these documents are properly considered in connection with the motion to dismiss. *See Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (noting that in reviewing a motion to dismiss we "may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"). *See also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that where a document is not incorporated by reference, it may nevertheless be considered where "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint") (quoting *Mangiafico v.*

5

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). And the documents, far from lending plausible support to Sutton's claims, undercut their plausibility.[2]

In sum, taken as a whole, the allegations in the TAC and its related documents fail to rise above conclusory allegations of sexual behavior. The TAC references, for example, text messages exchanged between Mangano and DelSeni. *See* J.A. 22; 87-90; 142-185. Those text messages – mostly sent before Sutton's first complaint to Galante – indicate that Mangano invited male and female students alike to breakfast meetings. *Id.* at 142-45. They also indicate that, rather than contacting Sutton in order to harass her, Mangano did so after he was repeatedly informed of Sutton's extensive performance deficiencies, including repeated lateness, incomplete lesson plans, unwillingness to accept feedback, early departures from school, and failure to make copies and properly lock her classroom. *Id.* at 147-185. The TAC likewise references the many e-mails that contemporaneously documented how Sutton described Mangano's behavior when she first complained of it. *Id.* at 91-92. Almost entirely absent from those complaints is even a hint of alleged sexual advances. We therefore AFFIRM the district court's dismissal of Sutton's *quid pro quo* sexual harassment claim.

### B. Retaliation Claim

---

[2] *See* J.A. 18-19 (referencing Mangano's breakfast invitations, J.A. 87-90); J.A. 22 (referencing texts between Mangano and Dawn DelSeni, the Sachem Central School District teacher who hosted Sutton's student-teaching internship, J.A. 165-67); J.A. 26 (referencing Sutton's September 29, 2017, e-mail to Nicole Galante, the student-teaching program director at SBU, J.A. 91); *id.* (referencing the teaching evaluations Mangano conducted, J.A. 213-222); J.A. 27 (referencing Galante's October 3, 2017, e-mail, J.A. 92-93); J.A. 30 (referencing an October 17, 2017, e-mail from Sutton to SBU Assistant Dean Melissa Jordan, J.A. 271-72); J.A. 36 (referencing Galante's October 16, 2017, e-mail describing SBU's proposed remediation plan and "teaching contract" for Sutton, J.A. 98-116); J.A. 41 (referencing Sutton's SBU appeal, J.A. 278-279); *id.* (referencing e-mails describing the internal SBU appeals process, J.A. 281-84); and J.A. 43 (referencing Vice Provost Charles S. Taber's December 19, 2017, letter resolving the appeal, J.A. 121-23, 303-305).

A plaintiff claiming retaliation under Title IX must establish a *prima facie* case by showing: "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)). Sutton argues that the temporal proximity between her complaints about her supervisor in the student-teaching program and her expulsion from the program make out a *prima facie case* for unlawful retaliation under Title IX. We disagree. Even assuming *arguendo* that Sutton plausibly alleged that she engaged in protected activity, we conclude that she failed sufficiently to allege that Defendants-Appellees were aware of it.

First, Sutton claims that she informed Nicole Galante, the SBU program director, by e-mail of a variety of complaints about Mangano on September 29, 2017. J.A. 27, 91. But as we observed when it came to Sutton's *quid pro quo* harassment claim, the allegations in the TAC must be read as a whole, and in light of e-mails integral to it. And while some individual portions of the September 29 e-mail read in isolation *might* indicate that Sutton was complaining about sex discrimination, the e-mail read as a whole suggests otherwise – that Sutton was complaining about unacceptable behavior on the part of Mangano and that she was being mistreated in general. For example, Sutton complained of supposed mistreatment by Mangano because she was the only student who did not attend his summer breakfast meetings. J.A. 91 ("I feel as if this man has a personal beef with me because I did not meet him for his 'student teaching breakfast' during the summer."). She also complained of being the "ONLY STUDENT" not to be fingerprinted and issued an official ID card. J.A. 92. Sutton points to an October 3, 2017, e-mail sent by Galante acknowledging Sutton's "heavy accusations." J.A. 27. But this reply e-mail does not suggest

7

that the accusations involved sex discrimination and it responds to one from Sutton complaining only about a fingerprinting policy. *See* J.A. 92.

In such circumstances, even if Sutton *had* plausibly alleged she was engaged in protected activity, these allegations are not enough to support the inference that Defendants-Appellees were aware of this activity, so that Sutton's expulsion could plausibly have been retaliatory. Sutton argues otherwise, relying on a later e-mail to another SBU official, Melissa Jordan. But while Sutton noted in passing in the October 17, 2017, e-mail sent to Jordan that "I had made a complaint . . . about a male professor who was harassing me," J.A. 30, she otherwise continued to complain about her general mistreatment by both male and female supervisors. J.A. 271. Taken as a whole, this e-mail could not have "put an employer on notice of a protected complaint." *Moore v. City of New York*, 745 F. App'x 407, 409 (2d Cir. 2018) (summary order).[3] Nor does an October 19, 2017, e-mail from Ken Lindblom, an SBU dean, indicate official knowledge of a sex discrimination complaint: instead, it refers merely to "unevidenced accusations [against] specific faculty members." J.A. 31. In sum, the allegations in their totality do not give rise to any plausible inference other than that Sutton's complaints were about Mangano's supervision of her in general. As Sutton herself wrote, her complaint with Mangano was that "he doesn't feel this (pursuing a career in teaching) is the right career choice for me, and, that because he feels this way, he's going to make sure I don't become a teacher." J.A. 91. Such allegations do not support

---

[3] In another e-mail, on October 19, 2017, Sutton describes "discrimination & differential treatment," *id.*, but, just as in *Moore*, makes no reference to sex discrimination. J.A. 30, 255; *see Moore*, 745 F. App'x at 409 ("A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if 'nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

Sutton's claim that SBU officials were aware that Sutton had lodged a sex discrimination complaint, and we thus AFFIRM the district court's dismissal of the Title IX retaliation claim.

## II. First and Fourteenth Amendments Claims

### A. First Amendment Retaliation Claim

To plead a First Amendment retaliation claim, a plaintiff needs to show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). An adverse action, in the context of a school, is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Cox v. Warwick Valley Central Sch. Dist.*, 654 F.3d 267, 273 (2d Cir. 2011) (citations omitted); *see also Dorsett*, 732 F.3d at 160 (noting that a plaintiff bringing a First Amendment retaliation claim must "show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm"). Sutton argues that she has plausibly pled causation between University officials' reactions to her complaints and her dismissal from the student-teaching program.

We agree with Defendants-Appellees that Sutton failed to plausibly plead a causal link between her complaints against Mangano and her dismissal. We have previously affirmed the dismissal of a First Amendment retaliation claim where a significant period of time elapsed between the alleged protected speech and the adverse action; numerous university officials approved the dismissal on the basis of substantial evidence of academic deficiency; and the university had "made a reasonable proposal in good faith that, if accepted, would have avoided [the plaintiff's] dismissal." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107

9

(2d Cir. 2001). That is precisely what happened here. Sutton was only dismissed from the student-teaching program after she failed to comply with measures instituted by SBU to improve her performance as a student-teacher: namely, that she sign a teaching "contract" committing to certain professional conduct and complete a "reflections" assignment about her teaching experience. J.A. 36, 271 (noting that "if you meet these milestones within the timeline given, you will be able to continue with the program in the Spring 2018 term"). Sutton declined to do either. *Id.* at 36. Moreover, the later decision to dismiss Sutton was ratified by a disinterested appeals committee. *Garcia*, 280 F.3d at 107. Although a shorter period of time elapsed here between the alleged protected speech and the adverse action, nonetheless "[t]here is no material evidence of a causal relation" between Sutton's protected speech and her dismissal. *Id.* The appeals committee concluded that Sutton had performance problems and poor teaching reviews; that other students had faced dismissal for similar issues; and that she had been offered an opportunity at remediation but refused. J.A. 303-05. Although a plaintiff must initially only allege a causal link "so that it can be said that his speech was a motivating factor in the [adverse action]," *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), we may sometimes determine at the motion to dismiss stage that the allegations, taken as a whole, cannot permit even a plausible inference of such a relationship. *See, e.g.*, *Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009) (summary order) (at the motion-to-dismiss stage, holding that the plaintiff could not "show that retaliation was the but-for cause of the discharge," because the plaintiff's conduct would "no doubt subject him to disciplinary action by the school," even absent a retaliatory motive) (citation omitted). Here, Sutton has failed to plead a nonconclusory allegation of retaliation as to the causation element. We therefore AFFIRM the dismissal of Sutton's First Amendment retaliation claim.

**B. Procedural Due Process Claim**

To satisfy procedural due process requirements for an academic dismissal, an institution must give a student notice and must render a decision that is "careful and deliberate."[4]   *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191 (2d Cir. 2015).   More specifically, we have held that a student is afforded the procedural process required by the Fourteenth Amendment where (1) the institution "fully informed [the student] of the faculty's dissatisfaction with [the student's] progress and the danger that this posed to timely graduation and continued enrollment," and (2) "[t]he ultimate decision to dismiss [the student] was careful and deliberate."   *Horowitz*, 435 U.S. at 85.   This standard reflects the "far less stringent procedural requirements," *id.* at 86, required for academic, as opposed to disciplinary, dismissal. As explained in *Horowitz*, because of the "more subjective and evaluative" nature of the judgment that school officials exercise in deciding whether or not to dismiss a student for academic reasons, academic dismissals are "not readily adapted to the procedural tools of judicial or administrative decisionmaking."   *Id.* at 90.   "A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum."   *Id.* at 85 n.2.

Sutton argues that the TAC, read in the light most favorable to her, demonstrates that her expulsion was characterized by procedural irregularities, such that she plausibly pled a procedural

---

[4]  We conclude that the standard for academic, rather than disciplinary, dismissal applies because there is no dispute that Sutton is not alleged to have violated a student code of conduct.   *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89-90 (1978) (holding that a medical student's dismissal was academic because it "rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal").   Instead, the rationale for Sutton's dismissal relates to her deficiency in skills needed to succeed in her chosen career, including professionalism, punctuality, and preparation.

due process claim. We disagree. Academic dismissals comport with the due process clause where (1) the institution informed the student of its dissatisfaction with her progress; and (2) the decision to dismiss the student was "careful and deliberate." *Id.* at 85. Here, SBU provided Sutton with notice of her deficiencies, the opportunity to correct them, and multiple levels of review before dismissing her from the program. Although Sutton has pled some facts that suggest the University deviated from its normal dismissal procedures, *see* J.A. 39-43, those deviations do not plausibly render the decision careless. We therefore AFFIRM the district court's dismissal of her procedural due process claim.

### C. Substantive Due Process Claim

Finally, Sutton alleges that her removal from the graduate teaching program at SBU violated her substantive due process rights. Substantive due process claims are analyzed under a two-step framework. *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021). The first step is "to identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). The second step of the analysis requires that a plaintiff "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" such that the Due Process Clause "would not countenance it even were it accompanied by full procedural protection." *Hurd*, 984 F.3d at 1087. We have held that "the right of occupational choice is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (quotations and citations omitted).

Sutton has not plausibly alleged that SBU's actions completely prohibited her from engaging in her chosen profession. While her dismissal from the student-teaching program may make her path more difficult, Sutton has other means of becoming a teacher, including transferring

12

to another graduate program or completing the remedial program she was offered and reenrolling in SBU's program.    We therefore AFFIRM the district court's dismissal of Sutton's substantive due process claim.

*    *    *

We have considered Plaintiff-Appellant's remaining arguments and find them to be without merit.    Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk