20-3078-cv
*Quinones v. City of Binghamton*

# United States Court of Appeals
# for the Second Circuit

August Term, 2020

(Argued: March 19, 2021      Decided: May 12, 2021)

Docket No. 20-3078

———————————————————————

ALAN QUINONES,

*Plaintiff-Appellant*,

v.

CITY OF BINGHAMTON, RICHARD DAVID, Mayor of the
City of Binghamton, in his official and individual capacities,
JOSEPH ZIKUSKI, Chief of Police for the City of Binghamton,
in his official and individual capacities, JOHN RYAN,
Assistant Chief of Police for the City of Binghamton,
in his official and individual capacities,

*Defendants-Appellees*.

———————————————————————

Before:

JACOBS, POOLER, and PARK, *Circuit Judges*.

Alan Quinones, a lieutenant with the Binghamton Police Department in upstate New York, alleges that he was racially harassed by members of the Department and retaliated against for voicing concerns about discrimination. In response, he sued the City of Binghamton, the City's mayor, and two Department officials. The district court dismissed Quinones's complaint, holding that he failed to articulate any discrimination claim and did not plausibly allege a claim for retaliation.

First, we agree with the dismissal of Quinones's retaliation claim because the complaint does not support an inference that he was punished for engaging in

protected speech. Second, although the complaint does not "enumerate" a claim for discrimination alongside the cause of action for retaliation, we find that Quinones does identify a discrimination claim. The introduction of the complaint specifies that Quinones brings a "claim for discriminatory conduct based on Hispanic origin . . . pursuant to 42 U.S.C. § 1981." The complaint also includes numerous factual allegations sufficient to notify Defendants that Quinones seeks redress for discriminatory conduct.

AFFIRMED in part, VACATED and REMANDED in part for further proceedings.

RONALD R. BENJAMIN, Law Office of Ronald R. Benjamin, Binghamton, NY, *for Plaintiff-Appellant*.

SHANNON T. O'CONNOR, Goldberg Segalla LLP, Syracuse, NY, *for Defendants-Appellees*.

PARK, *Circuit Judge*:

Alan Quinones is a lieutenant with the Binghamton Police Department in upstate New York. Quinones alleges that he was racially harassed by members of the Department and retaliated against for voicing concerns about discrimination. In response, he sued the City of Binghamton, the City's mayor, and two Department officials. The district court dismissed Quinones's complaint, holding that he failed to "enumerate" (and thus to articulate) any discrimination claim and did not plausibly state a claim for retaliation.

First, we agree with the dismissal of Quinones's First Amendment retaliation claim because the complaint does not support an inference that he was

2

punished for engaging in protected speech. Second, although the complaint does not "enumerate" a claim for discrimination alongside the cause of action for retaliation, we find that Quinones does identify a discrimination claim. The introduction of the complaint specifies that Quinones is bringing a "claim for discriminatory conduct based on Hispanic origin . . . pursuant to 42 U.S.C. § 1981." The complaint also includes numerous factual allegations sufficient to notify Defendants that Quinones seeks redress for discriminatory conduct.

We thus affirm the district court's judgment in part, vacate the judgment in part, and remand the case for consideration of the discrimination claim.

## I. BACKGROUND

A. Factual Background[1]

Alan Quinones, who is "of Hispanic origin," has worked for the Binghamton Police Department since 2008. App'x at 17. He began his career as a patrol officer, was promoted to sergeant in 2012, and received a second promotion to lieutenant in 2016.

Quinones alleges that, since at least 2014, he has been subjected to discriminatory "humiliation and ridicule" in his workplace. *Id.* at 20. According

---

[1] We draw these facts from Quinones's complaint and assume them to be true for purposes of this appeal. *See Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 139 n.1 (2d Cir. 2010).

to Quinones, Defendant John Ryan, currently the Department's Assistant Chief, repeatedly called Quinones "Ricky Ricardo," "mimick[ed] [Quinones] when he was speaking Spanish by imitating him in a derogatory manner," made "derogatory references to [Quinones] with comments such as, you are good [at] jumping fences," stated that Quinones "ran with gangs [and] knew how to steal cars and pick locks" in his youth, and said that Quinones was "classy Spanish" while another Hispanic officer was "Mexican Spanish." *Id.* at 20–21.

Quinones claims that the discriminatory conduct "extended to the rank-and-file" within the Department, alleging that a colleague used an ethnic slur to describe a Hispanic officer "several times in front of other officers." *Id.* at 21. Quinones also asserts that Defendant Joseph Zikuski, the Department's Chief, "acquiesc[ed]" in or "ratifi[ed]" Ryan's racist conduct, and that Defendant Richard David, the City's mayor, "knew or should have known of the severe racism existing in the Department yet failed to take any steps in ameliorating the same." *Id.* at 25. Quinones maintains that "but for the discriminatory conduct based on his Hispanic origin," he "would likely have been further advanced in his career." *Id.* at 17. In particular, he was "passed over" in 2018 for promotion to captain, and "a Caucasian who was clearly less qualified" was selected instead. *Id.* at 21.

4

Another officer in the Department, Christopher Hamlett (who is Black), allegedly experienced similar discrimination in the denial of a promotion. In July 2019, Hamlett informed Quinones that he intended to "file a race discrimination claim with the personnel department." *Id.* at 22. Quinones told Hamlett that he would "support [Hamlett] in his decision and tell the truth with respect to any information he had relating to race discrimination existing in the Department." *Id.*

Also in July 2019, Quinones "learned through other officers" that Zikuski had said Quinones's "career is 'done.'" *Id.* at 18. Hamlett advised Quinones that Hamlett "believed the race discrimination claim he filed with personnel was leaked and now the topic of conversation among the rank-and-file." *Id.* at 22. "[B]ecause of his concern that his career was 'done,'" and because "Hamlett's claim was now being discussed within the Department," Quinones scheduled a meeting with the City's personnel director and corporation counsel. *Id.* at 22–23. During that meeting, Quinones described "a conversation he had at [a] retirement party when Zikuski discussed Ryan being a racist, something he had mentioned on numerous different occasions." *Id.* at 23.

Quinones alleges that Zikuski retaliated against him following the meeting. Specifically, he claims that Zikuski (1) "attempt[ed] to undermine [Quinones's]

5

authority as a lieutenant by allowing a patrolwoman to act in a very belligerent manner in front of him"; (2) "attempt[ed] to remove [him] from the desk lieutenant position and have him work road patrol"; and (3) "asked [Ryan] to research which policies could be brought to charge [him] with misconduct" and in fact brought a "frivolous disciplinary action" against him. *Id.* at 18, 24. Quinones acknowledges that he was able to "refuse[]" reassignment to road patrol, *id.* at 24, and he does not allege that Ryan's "research" caused any misconduct charge.

In October 2019, Quinones filed an affidavit in support of Hamlett's discrimination suit against the City. In the affidavit, Quinones stated that he had himself suffered discrimination within the Department and that he believed Hamlett had been passed over for promotion because of his race. Quinones's complaint does not describe any acts of retaliation occurring after he filed his affidavit.

B.    Procedural History

In November 2019, Quinones filed this lawsuit against the City of Binghamton and the remaining Defendants (David, Zikuski, and Ryan) in their individual and official capacities. In the opening paragraph of his complaint, Quinones notes that he is bringing a "claim for discriminatory conduct based on

6

Hispanic origin . . . pursuant to 42 U.S.C. § 1981." App'x at 18. And throughout the complaint, Quinones describes various acts of racial harassment. At the end of the complaint, however, Quinones enumerates only one cause of action— "retaliation which plaintiff seeks to remedy through 42 U.S.C. § 1983." *Id.* at 22.

Defendants moved to dismiss Quinones's complaint under Rule 12(b)(6) for failure to state a claim. The district court granted the motion, concluding that the complaint enumerated only one claim (for First Amendment retaliation), which failed because Quinones had not identified any instances of retaliation occurring after he engaged in protected activity. *Quinones v. City of Binghamton*, No. 19-cv-1460, 2020 WL 4596922, at *1–2 (N.D.N.Y. Aug. 11, 2020). The district court declined to consider any discrimination claim. *Id.* at *1. This appeal followed.

## II. DISCUSSION

Quinones argues that the district court erred in two respects. First, he asserts that the district court should not have dismissed his First Amendment retaliation claim because he sufficiently pled a causal connection between protected speech and retaliatory action. Second, Quinones argues that the district court incorrectly construed his complaint as not raising a claim for employment discrimination because of its inadequate "enumeration." In Quinones's view, his

7

complaint contained enough information to articulate a discrimination claim. We disagree with Quinones's first argument but agree with his second.

A.    Standard of Review

We review *de novo* the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.    First Amendment Retaliation

The district court correctly concluded that Quinones failed to state a claim that he was punished for engaging in protected First Amendment activity.

Section 1983 allows plaintiffs to sue municipal entities (and municipal officials in their personal capacities) for deprivations of constitutional rights. 42 U.S.C. § 1983; *see Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011).[2] One right enforceable through section 1983 is the First Amendment's guarantee of freedom

---

[2] Although Quinones purports to sue the individual Defendants both in their official and personal capacities, an official-capacity suit against a municipal official "is, in all respects other than name, to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Quinones's official-capacity claims against the individual Defendants thus merge into his claims against the City.

8

of speech, which "prohibits [the government] from punishing its employees in retaliation for the content of their protected speech." *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001); *see also Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) ("It is well settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." (internal quotation marks omitted)). To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (cleaned up).

A public employee's speech is protected by the First Amendment when "the employee spoke as a private citizen and . . . the speech at issue addressed a matter of public concern." *Id.* at 393. "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 399 (internal quotation marks omitted). But speech that is "calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First

9

Amendment protection." *Id.* at 400 (internal quotation marks omitted). Likewise, the First Amendment does not protect speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation." *Id.* at 399 (cleaned up).

Quinones fails to state a retaliation claim because he alleges no speech or conduct protected by the First Amendment for which Defendants punished him.

First, Quinones points to a July 2019 meeting with the City's personnel director and corporation counsel to discuss "his concerns that his career was 'done.'"[3] App'x at 22. During this meeting, Quinones reported a conversation in which Zikuski had allegedly called Ryan "a racist." *Id.* at 23. On appeal, Quinones makes no attempt to explain how this meeting constituted protected expression. We conclude that it did not, because neither the meeting generally, nor Quinones's report about Zikuski's comment specifically, addressed a matter of public concern.

---

[3] Quinones also arranged the meeting "because of . . . the fact that Hamlett's claim was now being discussed within the Department." App'x at 22. There is law that "any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims, can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment." *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005). But here, Quinones has not alleged that he spoke out against discrimination suffered by Hamlett at the July 2019 meeting. Drawing all reasonable inferences in the plaintiff's favor, it may have been reasonable to infer that the July meeting involved Hamlett, but Quinones's failure to allege that, while specifically alleging that he reported a conversation in which Zikuski called Ryan a racist, undermines the reasonableness of such an inference.

The allegations focus on Quinones's concern about his own career and his report that one police official speculated that another was racist. Such speech does not implicate the First Amendment. *See, e.g.*, *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 778, 781 (2d Cir. 1991) (employee's statements that hospital officials had harmed her career based on "malice, discrimination and conspiracy" did not "address matters of public concern" because "her primary aim was to protect her own reputation and individual development"); *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) (safety officer's lawsuit, which described retaliation for raising safety concerns, was "not speech on a matter of public concern" because it sought "relief . . . for [the employee] alone"); *see also Connick v. Myers*, 461 U.S. 138, 149 (1983) (noting that not "every criticism directed at a public official . . . plant[s] the seed of a constitutional case").

In deciding whether a public employee's statement addresses a matter of public concern, "[a] court should focus on the motive of the speaker," *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999), although "motive cannot be the *only* factor that we consider," *Reuland v. Hynes*, 460 F.3d 409, 416 (2d Cir. 2006) (emphasis added). Here, Quinones expressly alleges that the meeting was motivated by "concerns" about his "career." App'x at 22. And he alleges no other factors

11

suggesting that his comment specifically or the meeting generally had any "broader public purpose." *Lewis*, 165 F.3d at 163–64. Quinones's stated motivation in speaking—to protect his own career—thus confirms that he did not speak on a matter of public concern.

Second, Quinones points to his October 2019 submission of an affidavit in support of a discrimination lawsuit filed by his colleague, Hamlett. The problem with this allegation is that Quinones describes no acts of retaliation occurring *after* he filed the affidavit. Indeed, he acknowledges that "the retaliatory measures . . . occurred in the months before his October 23, 2019 affidavit." Appellant's Br. at 16. Quinones thus cannot allege "a causal connection between [any] adverse action and the protected speech." *Montero*, 890 F.3d at 394; *see Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (noting the "gap" left where the "main act of retaliation cited by [the plaintiff] . . . predate[d] his speech on a matter of public concern").

In sum, Quinones identifies two activities as the basis for his retaliation claim. But the first (a meeting to discuss his career) was not a protected activity, and the second (filing an affidavit) did not prompt any subsequent retaliation. As a result, the district court properly dismissed the retaliation claim.

C.    Employment Discrimination

The district court declined to consider Quinones's discrimination claim because it was not "enumerated" in the complaint. *Quinones*, 2020 WL 4596922, at *1; *see also id.* ("[T]he court will not, and does not, construe claims not specifically alleged in the complaint.").  It is true that the complaint identifies a single cause of action for retaliation and does not similarly label a cause of action for discrimination.  But this failure is not fatal here.

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has explained that "[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine" and "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1219 (3d ed. 2004)).  "[T]o stave off threshold dismissal for want of an adequate statement of their claim," plaintiffs are "required to do no more" than "state[] simply, concisely, and directly events that, they allege[], entitle them to damages." *Id.* at 12.

13

Here, Quinones's complaint does in fact assert a discrimination claim. The complaint's first paragraph states that "[t]he claim for discriminatory conduct based on Hispanic origin is brought pursuant to 42 U.S.C. § 1981."[4] App'x at 18. Quinones further alleges that he has been "consistently and systematically the victim of discriminatory treatment based on his [national] origin," *id.* at 17, and that he has "sustained damages as a result of being discriminated against on the basis of his Hispanic origin," *id.* at 21–22.

Quinones's complaint also describes racial harassment that tracks the section 1981 standard. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (stating that section 1981 "provides a cause of action for race-based employment discrimination based on a hostile work environment"). Quinones claims that Ryan mockingly and "repeatedly" called him "Ricky Ricardo," "mimick[ed] [him] when he was speaking Spanish by imitating him in a derogatory manner," and made numerous other insulting comments about his background. App'x at 20–21. He describes a patrol officer directing ethnic slurs

---

[4] We note that a plaintiff may not sue a municipal defendant under section 1981 alone, and instead must raise any section 1981 claims through a section 1983 action. *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018). But plaintiffs need not "invoke § 1983 expressly in order to state a claim," so long as they plead facts that plausibly indicate liability. *Johnson*, 574 U.S. at 11. This Court has thus construed a plaintiff's claims against a municipality, incorrectly brought under section 1981 alone, "as § 1983 claims." *Duplan*, 888 F.3d at 616.

toward a Hispanic colleague in the presence of other officers.  And he alleges that at times this harassment "happened almost on a daily basis," *id.* at 20, and "extended to the rank-and-file" within the Department, *id.* at 21.

Faced with these allegations, Defendants cannot claim that they were blindsided by "aspects of the case which may not have otherwise been clear on the basis of the complaint."  *Smith v. Campbell*, 782 F.3d 93, 99 (2d Cir. 2015) (citing *Johnson*, 574 U.S. at 11).  Indeed, Defendants' motion to dismiss expressly "interpreted Plaintiff's complaint to assert a claim under 42 U.S.C. § 1983 to enforce § 1981" and addressed the merits of that claim at length.  Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 7–17, N.D.N.Y. No. 19-cv-1460, ECF No. 6-1. Thus, Defendants were on notice of Quinones's discrimination claim.  Having moved to dismiss a discrimination claim on the merits, Defendants cannot assert any prejudice from Quinones's failure to include a separate section in his complaint enumerating discrimination as a cause of action.  *Cf. Smith*, 782 F.3d at 99 (observing that a defendant "[o]bviously" was not "prejudiced by [the plaintiff's] failure to identify § 1983 in the amended complaint" because "the

15

defendant's motion to dismiss addresse[d] [the plaintiff's] claim as one arising under § 1983").[5]

We therefore conclude that Quinones's complaint sufficiently "informed [Defendants] of the factual basis for" a discrimination claim despite his failure to enumerate it as a separate cause of action. *Johnson*, 574 U.S. at 12; *see also* Fed. R. Civ. P. 8(d)(1) (while "[e]ach allegation" in a pleading "must be simple, concise and direct," "[n]o technical form is required"). The question we resolve today— whether Quinones's complaint sufficiently identifies a discrimination claim at all, such that the district court should have addressed it—is separate from whether the complaint's factual allegations "show that [the] claim has substantive plausibility." *Johnson*, 574 U.S. at 12 (citing *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662). We express no view on the latter question, nor do we consider any other potential grounds for dismissal, which the district court may address on remand.

---

[5] Defendants also argue that Quinones "abandoned" his employment discrimination claim by "fail[ing] to oppose that portion of defendants' moving papers arguing that any claims under 42 U.S.C. § 1981 should be dismissed." Appellees' Br. at 23. But Quinones did oppose the dismissal of his discrimination claim in the district court. *See* Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 10–12, N.D.N.Y. No. 19-cv-1460, ECF No. 8 (arguing that the "hostile working environment" claim was adequately pled).

## III. CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of Quinones's First Amendment retaliation claim. We vacate the dismissal of Quinones's discrimination claim and remand the case for further proceedings consistent with this opinion.