# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 28, 2022

Lyle W. Cayce
Clerk

No. 22-60034

Bailie Bye,

*Plaintiff—Appellant*,

*versus*

MGM Resorts International, Incorporated,
doing business as Beau Rivage Resort and Casino,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:20-CV-3

Before Jones, Ho, and Wilson, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Plaintiff is a working mother who brought suit against her employer for pregnancy discrimination under Title VII, constructive discharge, and creating a hostile work environment. The district court granted summary judgment to her employer because she failed to create triable fact issues. We concur. We also find no error or abuse of discretion in the district court's dismissal of her belatedly-raised Fair Labor Standards Act ("FLSA") claim. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346 (2014) (per curiam) is inapposite. The judgment is AFFIRMED.

No. 22-60034

## BACKGROUND

Defendant Beau Rivage Resorts, LLC operates a casino and resort facility in Biloxi, Mississippi. Plaintiff Bailie Bye was employed at Beau Rivage as a server at Defendant's Terrace Café from January 7, 2015, until she gave two weeks' notice on June 28, 2019. She brought suit against Beau Rivage alleging that, while she was employed, she was subject to pregnancy and sex discrimination, harassment, and constructive discharge in violation of Title VII of the Civil Rights Act. Specifically, she challenges the adequacy of her lactation breaks and she alleges harassment from co-workers due to her lactation breaks.

As a matter of course, servers at the Terrace Café were provided a mandatory 30-minute break and two additional optional 15-minute breaks during their shifts. They would generally follow a breaker schedule to track their breaks. For each shift, one of the servers would serve as a "breaker," who was responsible for relieving each server for his or her break. The breaker would relieve those who started earliest in the shift and rotate to those who arrived later. The earliest arrivals would come in at 6am, the next round at 8am, and the last round at 1pm. Servers were sometimes delayed, however, from taking their breaks for any number of reasons including staffing, shift changes, the number of patrons in the restaurant, or customers lingering at the table. It was in the servers' best interest to delay a break until a table's entrée was served in order to retain the tip from that table instead of having the table (and the accompanying tip) transferred to the breaker. This was especially true given the added complication of having to involve a manager to close out a check for a server who was on break.

Ms. Bye returned to work from maternity leave on March 10, 2019. She worked the 8am-4pm shift. Upon her return, she requested two 30 to 40-minute lactation breaks. At first, she did not request that her breaks occur

2

at any particular time.  Her request was approved, and she received access to a locked lactation room.  She typically received her first break according to the breaker schedule and her second break after the breaker relieved the other servers.  For just over two months, Ms. Bye took either two 30-minute breaks or one hour-long break each full day she worked.

On May 11, 2019, Ms. Bye sought a modified accommodation, seeking two 45-minute breaks at specific times—the first at 10am and the second at 1pm.  She included a medical certification from her physician, which stated that "she must be able to pump breast milk twice during her shift in 45 min increments, once at 10:00am and at 1:00 pm."  Management was initially concerned that scheduling breaks at specific times would be difficult due to the unpredictable nature of the business and the need for flexibility in order to maintain continuity in service.  Thus, in response to her request, Beau Rivage offered Ms. Bye three options: (1) she could work the earlier 6am shift, allowing her to take an earlier break at 8am; (2) she could work as the breaker for as long as she needed to in order to take her breaks as needed; or (3) she could break once in the morning and once in the afternoon for 45 minutes as close as possible to the times she requested, but not necessarily at those exact times.  Ms. Bye rejected all three proposals.

Nevertheless, management granted Ms. Bye's request for an accommodation on June 14, 2019, indicating that she could take her first break sometime between 10am and 10:30am and her second break sometime between 1pm and 1:30pm.  According to Beau Rivage, in compliance with this new schedule, Ms. Bye's manager would speak with the breaker at the beginning of every shift to ensure that Ms. Bye received her breaks at the necessary time.  When the breaker was unable to accommodate Ms. Bye's schedule, one of the managers would step in and cover her tables or close her section so she could go on her break.  Ms. Bye contends, on the other hand, that her breaks were "sporadic, sometimes not occurring at all" and

sometimes occurring "30 minutes to over an hour past time." She suggests that there were multiple times when the breaker did not respect her specific break time and that there was effectively "no accommodation made for Ms. Bye to take breaks."

Ms. Bye further alleges that her co-workers began to harass her as a result of this new break schedule. She describes various instances where co-workers got frustrated with her for wanting to leave early or for taking her breaks. She asserts that her co-workers did not want to work with her and that they made negative comments to her about her lactation breaks. She also contends that her general manager was attempting to terminate her, but her belief is based entirely on the fact that one of the restaurant hostesses, Jennifer Cress, told Ms. Bye that Jennifer knew about a group message among restaurant workers where an unidentified person stated that the general manager "was working on getting rid of [Plaintiff]." Ms. Bye never saw this message herself, and Jennifer told her that she did not "know how true it is" or "who it came from" because she was not a participant in the group message.

Due to this alleged mistreatment, Ms. Bye contends that she complained to human resources about not receiving breaks as scheduled and the purported harassment by her co-workers, but that nothing ultimately came of her reports. She testified in her deposition that, "[r]ight when [she] was finally starting to actually get pump breaks at the times that [she] needed them, the harassment had gotten overwhelming." She gave two weeks' notice on June 28, 2019.

On May 29, 2019, Ms. Bye filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging harassment, sex discrimination, and retaliation due to being "denied the ability to take needed breaks and use a breast pump." She filed a second

charge with the EEOC on August 2, 2019, alleging retaliation and that she "was forced to quit [her] job at the Beau Rivage due to them refusing to allow [her] to take breaks to pump breast milk, along with harassment from [her] coworkers." The EEOC issued right to sue letters for both charges on September 17, 2019.

On November 13, 2019, Ms. Bye filed suit against Beau Rivage in the Circuit Court of Harrison County, Mississippi, alleging pregnancy and sex discrimination, harassment, and constructive discharge in violation of Title VII. Defendants removed the case to federal court.

The district court granted summary judgment to Beau Rivage, holding that Ms. Bye did not present sufficient evidence to support a prima facie case of either disparate treatment, harassment, or constructive discharge. Regarding her allegations of inadequate lactation breaks, the court further noted that, even if Ms. Bye could support a prima facie case of disparate treatment, her claim would still fail because Beau Rivage has articulated legitimate, nondiscriminatory reasons for not giving her breaks at the exact times requested.

Ms. Bye also invoked the FLSA for the first time in response to the motion for summary judgment, and the district court rejected the claim as untimely and not properly before the court. Ms. Bye appealed.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*, "applying the same standard as the district court." *Brandon v. Sage Corp.*, 808 F.3d 266, 269 (5th Cir. 2015) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005)). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552

No. 22-60034

(1986). But "[o]nce the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (internal quotation marks omitted).

## DISCUSSION

Ms. Bye raises three primary arguments[1] on appeal. First, she challenges the district court's conclusion that she failed to make out a prima facie case of harassment or hostile work environment. Second, she suggests that her constructive discharge claim should have made it to a jury. Third, she contends that the district court erred by dismissing her FLSA claim.

### I.    Harassment/Hostile Work Environment

The district court held that Ms. Bye failed to establish a prima facie case of harassment or hostile work environment. "Title VII does not prohibit all harassment." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019), *as revised* (Feb. 7, 2019). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998)). These standards are intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 788, 118 S. Ct. at 2284 (internal quotation marks omitted). "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not

---

[1] Ms. Bye does not challenge on appeal the district court's rejection of her disparate-treatment claims.

constitute actionable adverse employment actions as discrimination or retaliation." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (internal quotation marks omitted).    Rather, there must be "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (internal quotation marks and alterations omitted).

In order to establish a hostile work environment claim, Ms. Bye had to demonstrate that

> (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001).    The district court determined that, "at a minimum the third and fourth elements are problematic" for Ms. Bye.    It concluded that she failed to produce "any competent summary judgment evidence, other than her own conclusory assertions or subjective beliefs," that indicated that the alleged harassment was related to her lactation breaks.    While she provided comments that her co-workers made about her taking breaks to pump, she has submitted no evidence showing the frequency of the comments or who specifically made them.    Additionally, according to the district court, the conduct described by Ms. Bye was not "sufficiently severe or pervasive," as she again failed to demonstrate that the alleged hostility was more than "mere offensive utterances," which are not sufficient to establish a claim under Title VII.

We find nothing problematic about the district court's assessment of the evidence.    Ms. Bye contends that the district court inappropriately

dismissed evidence that "employees chose to and purposefully failed to break Ms. Bye on time, harassed Ms. Bye by clapping when she had to leave to go to the hospital for her child, [and] refus[ed] to work with Ms. Bye." But as the district court observed, Ms. Bye provided no evidence regarding who said what or how often, or how this treatment was related to her needing to take lactation breaks. All the court had was Ms. Bye's own account, unsupported by competent evidence. And her subjective beliefs as to the motivation of others are insufficient.

Additionally, the level of mistreatment she claims occurred would not constitute harassment or a hostile work environment under Title VII. For conduct to be sufficiently severe or pervasive, it must be both objectively and subjectively offensive. *Badgerow*, 974 F.3d at 617–18. To determine whether the work environment is objectively offensive, the court considers the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* at 618 (internal quotation marks omitted). "No single factor is determinative." *Id.* (internal quotation marks omitted).

Ms. Bye's allegations do not support a finding that the conduct was objectively severe. At worst, her co-workers were unkind to her, and she had difficulty working with some of them. But not all troubled work relationships can be remedied by federal law. Title VII is not a tool to exact revenge on those with whom one does not get along. The picture she paints is not of a hostile or abusive working environment as evaluated by the totality of the circumstances. Ms. Bye's harassment claim fails as a matter of law.

## II.     Constructive Discharge

For similar reasons, the court correctly granted summary judgment on Ms. Bye's constructive discharge claim.  She contends that Beau Rivage constructively discharged her by not allowing her to take lactation breaks as needed.  "To prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'"  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). This court has considered the following events relevant in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion;  (2) reduction  in  salary;  (3) reduction  in  job responsibilities; (4) reassignment to menial or degrading work; (5) badgering,  harassment,  or  humiliation  by  the  employer calculated  to  encourage  the  employee's  resignation;  or (6) offers  of  early  retirement  that  would  make  the  employee worse off whether the offer were accepted or not.

*Stover  v.  Hattiesburg  Pub.  Sch.  Dist.*,  549 F.3d  985,  991 (5th Cir.  2008) (quoting *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008)).

Ms.  Bye  seeks  to  rely  upon  the  "badgering,  harassment,  or humiliation" by other employees, but, again, she has provided insufficient evidence that conditions were so intolerable that she was compelled to resign. "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."  *Brown*, 237 F.3d at 566. "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge . . . ."  *Id.*  On appeal, she faults the district court for allegedly failing to consider the physical pain she endured because she did not receive her lactation breaks on time.  And while there is no evidence to question that Ms. Bye experienced discomfort, she concedes she received her

lactation breaks most of the time, even if they were 30 minutes to an hour past the scheduled time.  A reasonable employee in Ms. Bye's shoes would not have considered these late lactation breaks so intolerable as to compel resignation, especially given management's ongoing efforts to accommodate her requests.  Ms. Bye's subjective disparagement of management's efforts, given much evidence of the difficulty of arranging breaks exactly while also accommodating servers' needs to close out tables, is not sufficient to maintain her constructive discharge claim.

### III.    FLSA

Finally, Ms. Bye challenges the district court's dismissal of her untimely raised FLSA claim.  Ms. Bye never alluded to an FLSA claim until she responded to the defendant's motion for summary judgment. The district court determined that this belated reference demonstrated the claim was not properly presented.  *See Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021).  It is true that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).  Indeed, this court has "repeatedly emphasized this rule." *Id.* at 188–89 (collecting cases).

Ms. Bye, however, relies on the Supreme Court's statement in *Johnson v. City of Shelby, Miss.*, that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  574 U.S. 10, 11, 135 S. Ct. 346, 346 (2014) (per curiam).  In *Johnson*, the plaintiffs' failure to cite 42 U.S.C. § 1983 in their complaint was a hypertechnical error, given that the only plausible basis for federal court jurisdiction there was that the plaintiffs were terminated in violation of their First Amendment rights by their public

No. 22-60034

employer, which could only proceed according to § 1983.[2] *Id.* at 11, 135 S. Ct. 346–47. The Supreme Court cited *Twombly*[3] and *Iqbal*[4] in concluding that plaintiffs' allegations plainly "informed [the Defendant] of the factual basis for the[] complaint," as a result of which the plaintiffs were "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* at 12, 135 S. Ct. at 347.

*Johnson* is inapposite here for various reasons. First, the only claim considered by the Supreme Court was plaintiffs' sole claim under Section 1983, whereas here, the plaintiff's pleadings exclusively and repeatedly focus on Title VII claims alone. In *Johnson*, the Court noted that the plaintiffs' recitation of facts left no room for doubt as to the legal basis for their claim, *see id.*, whereas here, the plaintiff, represented by highly competent counsel, was the mistress of her complaint, and the several claims she pled all arose from Title VII. Neither the defendant nor the district court were required to read into the carefully stated complaint (together with exhibits demonstrating exhaustion of Title VII remedies) a wholly different claim that was not pled. This is one reason why this court has "repeatedly emphasized" that new claims need not be considered when first raised in responses to summary judgment motions.

---

[2] In support of this holding, the Court cited an employment discrimination case for the proposition that "imposing a 'heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2),'" thus suggesting that this conclusion is not limited to the § 1983 context. *Johnson*, 574 U.S. at 11, 135 S. Ct. at 347 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002)); *see also, e.g.*, *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 308 (5th Cir. 2020) (unpublished) (*Johnson* applied to hostile work environment claim); *Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 540 n.9 (5th Cir. 2018) (unpublished) (*Johnson* applied to wrongful discharge claim). Unpublished cases from this court are, however, non-precedential.

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

Second, nothing in *Johnson* purports to supersede the ordinary rules of case management prescribed by the Federal Rules of Civil Procedure. To be clear, in *Johnson,* the lower courts had granted and affirmed summary judgment based on plaintiffs' pleading omission, but the Court's opinion is premised on the obviousness of Section 1983 as the vehicle under which the claim had proceeded. Here, the progress of the case was quite different. The district court explained that Ms. Bye's attempt to raise an FLSA claim occurred months after the deadline for pleading amendments, well after the discovery cutoff date, and within a month or two of the trial setting. The court emphasized, correctly, how the case had developed for nearly two years in light of scheduling conferences and orders intended precisely to shape the case for impending trial or other final resolution.

Third, an FLSA claim for denial of lactation breaks invokes different facts and remedies than Title VII, e.g., claims for failure to pay overtime and potential double damages. *See* 29 U.S.C. § 207(r)(1)(A), Sec. 216. Although Section 207(r) specifies that an employer has no duty to compensate an employee for lactation breaks, the Department of Labor has ruled that if the employee uses regular break time for lactation, she must be paid in tandem with other employees.[5] Nothing in plaintiff's pleading asserted any damage claim consistent with the FLSA pregnancy provision. The district court noted this deficiency, stating that no facts had been adduced that as to unpaid minimum wage or overtime, nor did Ms. Bye claim other FLSA-related damages, e.g., the employer's abuse of exceptions like sick leave. In fact, because this provision has generally been enforced by the Labor Department rather than individual plaintiffs, the plaintiff's belated attempt to inject an FLSA claim here left the court and the defendants largely in the dark about

---

[5] FAQs pertinent to Section 207(r), at dol.gov/agencies/whd/nursing-mothers/faq, visited 9/27/2022.

its potential reach and consequences.  Contrary to the dissent, this was a "new" claim.

Fourth, in connection with case management, we note the district court considered *sua sponte* whether Ms. Bye should be permitted to amend and add the FLSA claim, but it rejected that option.  The Supreme Court's *Johnson* opinion does not discuss the implications to be drawn from Fed. R. Civ. Pro. 16, but it seems unlikely that in the course of holding only that facts, rather than legal theories, matter at the pleading stage,  the Court intended to upset the case management framework articulated in Rule 16, titled "Pretrial Conferences; Scheduling, Management."  Briefly summarizing its detailed provisions (which are further usually elaborated on by local district court rules),  the purposes of pretrial conferences include expediting disposition of the action; establishing early and continuing judicial control to avoid protracting the case; improving the quality of trial through more thorough preparation; and facilitating settlement.  Rule 16(a).  Further, a court *must* ordinarily issue a scheduling order that, *inter alia,* limits the time to amend the pleadings, complete discovery, and file dispositive motions. Rule 16(b)(2), (3)(A).  Finally, among many case management aims stated for pretrial conferences, the court "may" "formulat[e] and simplify[] the issues, and eliminat[e] frivolous claims and defenses."  Rule 16(c)(2)(A).  Each of these steps had occurred in this case,  more than once.  Yet at no time during the two-year pendency of the case had Ms. Bye alluded to an FLSA claim, and the parties were on the verge of trial when the district court ruled on defendant's motion for summary judgment.  The court cited the length of her delay, the prejudice to the defendant, and the burden on the court from a continuance that would be required to address her new claim.  The belated FLSA claim was an abuse of the opposing party and the court, and it was no abuse of discretion for the district court to deny an amendment.  Moreover, Ms. Bye failed to address this aspect of the court's decision and has forfeited

any challenge to it.  *In re Southmark Corp.*, 163 F.3d 925, 934 n.12 (5th Cir. 1999).  In essence, she concedes the impropriety of her dilatory maneuver.

Fifth, our colleague cites two cases that allegedly adopted a "broad" version of *Johnson,* but each is plainly distinguishable.  The Second Circuit in *Quinones* reversed a  Rule 12(b)(6) dismissal on the pleadings where the district court incorrectly found no Sec 1981 discrimination claim had been pled---despite that the plaintiff's first paragraph stated, "[t]he claim for discriminatory conduct based on Hispanic origin is brought pursuant to 42 U.S.C. Sec. 1981."  *Quinones v. City of Binghamton,* 997 F.3d 461, 468-69 (2d Cir. 2021).  Plaintiff's complaint also alleged he sustained damages because he was discriminated against on the basis of Hispanic origin."  *Id.* Unlike this case, *Quinones* had not proceeded through the court-supervised pretrial management process to the end of discovery and verge of trial before the "new" claim had been articulated.   And in *Koger v. Dart,* 950 F.3d 971, 974-75 (7th Cir. 2020), the Seventh Circuit noted that the magistrate judge *herself* had understood a prisoner plaintiff's suit to include a due process damage claim for the prison's loss of his books, even though the court later held the claim was insufficiently pled.   There was no surprise to the defendants or the court about that claim which had been maintained from the outset.  And  again, there is no discussion of the impact of pretrial case management upended by the plaintiff's tactic of belated articulation. We do not disagree with *Johnson,* nor with the sister circuits' decisions, but each case must be understood in its specific procedural setting.  The procedural setting of the instant case likewise necessarily bears on the latitude with which the "facts only" pleading rules apply as a case moves further, via case management principles,  toward trial or definitive motion practice.

## CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED.

JAMES C. HO, *Circuit Judge*, concurring in part and dissenting in part:

The Fair Labor Standards Act is often understood as helping workers by providing extra pay for extra hours worked. But "that is not the only way—and perhaps not even the best way—to understand the FLSA." *Hewitt v. Helix Energy Sols. Grp.*, 15 F.4th 289, 303 (5th Cir. 2021) (en banc) (Ho, J., concurring), *cert. granted*, _ U.S. _, 142 S. Ct. 2674 (2022). What drives many Americans is not higher pay, but a better life. What gets countless citizens out of bed each morning is not work, but family. Many workers prefer "more free time over more money," because that means more opportunity to "rest, recreate, and spend time with loved ones." *Id.* In sum, the FLSA helps many workers lead more joyous and abundant lives by offering not greater compensation, but better working conditions.

Consistent with these principles, Congress amended the FLSA in 2010 to require employers to provide nursing mothers reasonable unpaid break time to express breast milk after the birth of a child. Pub. L. No. 111-148, § 4207, 124 Stat. 119, 577-78 (2010). As amended, the Act requires employers to "provide . . . a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk," and "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(A)-(B).

The complaint in this case appears to plead all of the facts necessary to support a claim that the Beau Rivage Resort and Casino in Biloxi, Mississippi, violated Bailie Bye's rights to a reasonable break time for nursing as required by the 2010 amendments to the FLSA. Specifically, Bye's complaint alleges that the lactation breaks that the Beau Rivage afforded her "were sporadic." "The room was filthy, and [she] had to complain to make

sure that the room was cleaned up so that the room was sanitary to pump." "Every time she needed a break [she] was questioned or told that she had to wait." Her "breast became engorged" because she "was not given regular breaks," leading to "unbearable pain at work." She was "told that she could not take a break until employees who had not taken their breaks yet had taken their breaks." As a result, she was only given her break "hours past its required time." "Because of [her] pumps breaks," "co-workers began to harass" her. She was eventually "forced to leave her employment because she could no longer endure the harassment and physical pain from not being allowed to take her pump breaks."

These allegations would seem to be well sufficient to state a claim under the FLSA, but for one problem: The complaint does not mention the FLSA. It mentions only Title VII of the Civil Rights Act of 1964.

The panel majority concludes that this omission is fatal to the FLSA claim, and accordingly dismisses it without addressing its merits.

I respect the majority's reasoning. But I'm not sure it's consistent with governing Supreme Court precedent.

## I.

Reasonable minds can disagree over how much detail a plaintiff should be required to include in a complaint—and how best to strike the balance between ensuring fair notice to defendants and avoiding unnecessary burden on plaintiffs. In this case, Bye's complaint mentions no statutory basis for relief other than Title VII. So Beau Rivage might reasonably infer that Bye deliberately chose not to pursue relief under any provision of law other than Title VII. *Expressio unius* usually means *exclusio alterius*. *See ante*, at 11–12.

But the Supreme Court has made clear that plaintiffs need only plead facts—not legal theories.

In *Johnson v. City of Shelby, Mississippi*, 574 U.S. 10 (2014) (per curiam), the Supreme Court summarily reversed our court for mistakenly requiring plaintiffs to plead legal theories as well as facts. The Court explained that "[a] plaintiff . . . must plead *facts* sufficient to show that her claim has substantive plausibility." *Id.* at 12 (emphasis added). It concluded that the complaint in that case alleged sufficient facts: "Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city." *Id.*

And here's the kicker: "Having informed the city of the factual basis for their complaint, they were required to do *no more* to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* (emphasis added).

So *Johnson* makes clear that "it is *unnecessary* to set out a legal theory for the plaintiff's claim for relief." *Id.* (quotations omitted, emphasis added).

Other circuits have interpreted *Johnson* similarly. The Seventh Circuit summed it up this way: Under *Johnson*, "[c]omplaints plead *grievances*, not legal theories." *Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020). So it didn't matter that a complaint "initially relied only on the First Amendment"—the plaintiff could still invoke the Due Process Clause "at later stages of the suit." *Id.* at 975. What's more, the plaintiff "did not [even] need to amend the complaint to do so." *Id.* The Second Circuit has taken the same approach. *See Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2nd Cir. 2021) ("[T]he complaint identifies a single cause of action for retaliation and does not similarly label a cause of action for discrimination. But this failure is not fatal here.") (following *Johnson*).

To be sure, I can understand the temptation to reconceptualize *Johnson*. After all, the plaintiffs there plainly alleged a constitutional violation by the city—their complaint just neglected to mention 42 U.S.C. §

1983. It would surely be "obvious" to any defendant—and certainly to any municipal lawyer worth their salt—that a complaint that alleges a constitutional violation by a city surely means to seek relief under § 1983. *See ante*, at 12 (noting "the *obviousness* of Section 1983 as the vehicle under which the claim had proceeded" in *Johnson*) (emphasis added).

So it would have been easy for the Court to decide *Johnson* based on the inherent obviousness of § 1983 claims, and nothing more.

But it didn't. *Johnson* is premised not on § 1983, but on general pleading principles.

## II.

Before I conclude, I offer a few brief rebuttals to various additional points made by the panel majority.

1. The majority tries to distinguish this case from *Johnson* on the ground that "each case must be understood in its specific procedural setting." *Ante*, at 14.

As the majority explains, Bye did not refer to the FLSA until "well after . . . discovery," when she "first raised [it] in responses to summary judgment motions." *Id.* at 12. Based on that procedural posture, the majority concludes that allowing Bye's claim to proceed at this stage would "supersede the ordinary rules of case management" and "upset the case management framework articulated in Rule 16." *Id.* at 12, 13.

But *Johnson* involved precisely the same procedural posture. Like Bye, the plaintiffs in *Johnson* did not mention their statutory basis for relief until "after" discovery, in response to a motion for summary judgment. *See Johnson v. City of Shelby*, 743 F.3d 59, 61 (5th Cir. 2013), *rev'd*, 574 U.S. 10 ("Following discovery, the City . . . filed a motion for summary judgment,"

where it "argued that it was entitled to judgment in its favor because [the plaintiffs] did not invoke 42 U.S.C. § 1983 in their complaint.").

2.    The majority offers another observation about the procedural posture of this case:  The court below "considered *sua sponte* whether Ms. Bye should be permitted to amend and add the FLSA claim, but it rejected that option." *Ante*, at 13.  That is significant, the majority says, because "it was no abuse of discretion for the district court to deny an amendment"— and what's more, "Bye failed to address this aspect of the court's decision and has [thus] forfeited any challenge to it." *Id.* at 13–14.  And in the absence of an amendment, the majority contends, Bye's FLSA claim conflicts with the established principle that "new claims need not be considered when first raised in responses to summary judgment motions." *Id.* at 11.

But *Johnson* makes clear that there was no need for Bye to amend her complaint.

To begin with, no amendment was necessary because the complaint is already sufficient.  That's the whole point of *Johnson:*  Facts are enough— and legal theory is not required—to state a claim.  *See* 574 U.S. at 12 ("no more" is "required" than providing a "factual basis for the[] complaint," and "it is unnecessary to set out a legal theory") (quotations omitted).

What's more, the Court noted that the plaintiffs there should "be accorded an opportunity" to amend their complaint—but only for purposes of "clarification," not legal mandate.  *See id.* ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983."); *see also Koger*, 950 F.3d at 975 (under *Johnson*, plaintiff "did not need to amend the complaint").

3.    Finally, the majority observes that Bye failed to allege damages in the form of either "unpaid minimum wage or overtime," as contemplated

No. 22-60034

by 29 U.S.C. § 216(b). *Ante*, at 12. But that is not surprising. As the Labor Department has noted, unpaid minimum wages and overtime compensation are not the appropriate remedies for violations of the FLSA nursing provision "in most circumstances."[1] I have found no circuit opinions to date that analyze what remedies are available under 29 U.S.C. § 207(r)(2) for plaintiffs like Bye. But in all events, the point is that the district court should have decided Bye's FLSA claim on the merits, rather than refuse to consider her claim altogether.

\* \* \*

I agree with the majority with respect to the Title VII claim. I disagree as to the FLSA claim. Accordingly, I concur in part and dissent in part.

---

[1] *See, e.g., Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073-01, 80078 (Dec. 21, 2010) ("Section 7(r) of the FLSA does not specify any penalties if an employer is found to have violated the break time for nursing mothers requirement. In most instances, an employee may only bring an action for unpaid minimum wages or unpaid overtime compensation and an additional equal amount in liquidated damages. 29 U.S.C. 216(b). Because employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."); *see also* 29 U.S.C. § 207(r)(2) ("An employer shall not be required to compensate an employee receiving reasonable break time under paragraph (1) for any work time spent for such purpose.").